IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 22-224 |
| | : | |
| | : | |
| DAQUAN BISHOP | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Mr. Bishop wholeheartedly acknowledges that his decision to possess a firearm after

having been convicted of felonies and while on parole was a foolish and illegal one.  He

appreciates the serious nature of his offense, is sincerely remorseful, and has taken this

opportunity to set his mind to changing the trajectory of his young life.  He blames only himself

for his actions, takes full responsibility, and deeply regrets the impact his decision has had on his

family—particularly his infant daughter of whom he only learned and finally met following his

arrest.  Becoming a father while incarcerated has been a tremendous eye opener for him.

Mr. Bishop submits this memorandum in aid of sentencing.  He pled guilty pursuant to

FED. R. CRIM. P. 11(c)(1)(C),[1] accepts full responsibility for his actions, and respectfully requests

that this Court consider the mitigating factors explained in this memorandum and impose the

---

[1] Ninety-seven percent of all federal convictions are the result of guilty pleas, and guilty plea agreements are central to the administration of criminal justice.  *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012) ("The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties.")  Guilty pleas bring finality to criminal cases without the uncertainties and laboriousness of pretrial, trial, and direct and collateral appellate litigation.  Indeed, the Supreme Court has recognized that the finality of criminal judgments is "essential to the operation of our criminal justice system."  *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality).  As such, the Third Circuit, favoring the nontrial, final disposition of criminal cases, has repeatedly affirmed district courts' authority to accept plea agreements containing stipulations to sentences even below the applicable Guidelines range.  *See e.g. United States v. Hicks*, 284 F. App'x 998, 1000 (3d Cir. 2008) (not precedential); *United States v. Clayborn*, 221 F. App'x 126, 128 (3d Cir. 2007) (not precedential); *United States v. Bernard*, 373 F.3d 339, 344-45 (3d Cir. 2004).

jointly recommended sentence of 37 months of incarceration, three years of supervised release, and a $100.00 special assessment. This sentence will be sufficient but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005).

I.     **SIGNIFICANCE OF MR. BISHOP'S PERSONAL HISTORY AND YOUTH**

By all accounts, Mr. Bishop grew up in a loving, supportive home. Presentence Report (PSR) ¶¶ 48, 50. His mother, a correctional officer, reared Mr. Bishop by herself until she married his stepfather when Mr. Bishop was ten years old. *Id.* at ¶ 46. His biological father abandoned him and his mother when Mr. Bishop was just an infant, and he understandably harbors significant resentment towards his father to this day, noting "[h]e hasn't been there since I was born [and] I don't like him." *Id.* In hindsight, Mr. Bishop was certainly affected by his father's absence, which contributed to his youthful poor decision-making, including that which underlies his prior criminal history, and draw to negative peer influences as a teenager. *See id.* at ¶¶ 31-40, 48.

Mr. Bishop's youth at the time of his commission of this and previous offenses undoubtedly explains his foolish decisions and trajectory to date. *See* B.J. Casey, *Healthy Development as a Human Right: Lessons from Developmental Science*, 102 Neuron, 724 (2019) (human brain development not complete until early- to mid- 20s; structural changes during brain maturation, including decreased gray matter in prefrontal brain regions, increased white matter in prefrontal cortex, and increased connections between prefrontal cortex and brain's limbic system, results in improvements in executive brain functioning, including planning ahead, consideration of future consequences, logical reasoning, weighing risks and rewards, emotion

2

regulation, and self-control; decreases in impulsivity, sensation-seeking, and peer influence expected and observed over time with adult brain maturation). As the Supreme Court has repeatedly acknowledged, youthful offenders have diminished culpability and greater prospects for rehabilitation due to their underdeveloped brains. *See Miller v. Alabama*, 567 U.S. 460, 471-73 (2012) (acknowledging implications of science of juvenile and young adult brain development on sentencing).

Luckily, as Mr. Bishop continues to mature, he is likely to "age out" of the type of criminal conduct that brings him before this Court. *See id.* Indeed, that he was cooperative with law enforcement officers upon being arrested, immediately took ownership of his criminal conduct, and has adjusted positively to incarceration, maintaining a clean disciplinary record, is a positive sign and some evidence of Mr. Bishop's growth. PSR ¶¶ 11, 16. Critically, learning he is a father during his present incarceration and his sincere desire to be present for his daughter in the way his own biological father failed to be have already motivated a positive change in his attitude and outlook on life. *Id.* at ¶ 50. Imposition of the sentence outlined in the plea agreement will undoubtedly serve to allow Mr. Bishop to further mature and reflect upon what he wants for his future.

## I. THE RECOMMENDED SENTENCING GUIDELINE RANGE

Mr. Bishop, through his counsel, agrees that the PSR correctly calculated the guidelines as 37-46 months. *Id.* at ¶ 66. In light of the aforementioned mitigation and because the jointly recommended sentence of 37 months of incarceration is fair and reasonable in considering the 18 U.S.C. § 3553 factors listed below, Mr. Bishop respectfully requests that this Court honor the plea agreement and impose the sentence agreed upon therein.

## II. APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

3

The Court must consider all the factors identified in 18 U.S.C. § 3553 and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a).   In this case, a sentence of 37 months of incarceration followed by three years of supervised release meets this criteria.  The factors the Court must consider include:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  *Id.*

### A.      The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

Mr. Bishop appreciates that any firearm offense—particularly possessing a firearm as a convicted felon—is a serious one.  When Pennsylvania Parole agents came to his home in search of weapons, Mr. Bishop did not try to flee or lie.  PSR ¶¶ 13-16.  He opened the door to the agents, submitted to their detention, and, following the recovery of the firearm at issue, admitted to ATF agents that the firearm belonged to him and that he knew he was not permitted to possess it due to his prior convictions.  *Id.*  He accepted responsibility for his crime before this Court as early as possible, and he makes no excuses for his conduct.  *Id.* at ¶ 2.

As detailed above, Mr. Bishop is a young man who has admittedly made extremely

foolish decisions throughout his short life.  Not only will he receive an incarceration sentence for the instant offense, he will also face additional incarceration by the Pennsylvania Parole Board for his violation of parole—specifically, a presumptive setback of 18-24 months and up to approximately seven-and-one-half years.  *Id.* at ¶ 40.  He will be meaningfully older by the time he is released from prison, and he has already begun to express growth and maturity during his present incarceration, particularly his desire to be present for his young daughter.  *Id*. at ¶ 50.

Importantly, Mr. Bishop has the strong support of his mother and sister.  *Id.*  He has a work history that evidences the ability and desire to be a productive member of society, *id.* at ¶¶ 59-60, and, aside from the instant offense, Mr. Bishop was compliant with his parole obligations.  *Id.* at ¶ 38.  He is "respectful, caring, [] loving," and an overall "good person" according to the people who know him best.  *Id.* at ¶ 50.  His regrettable decision to possess a firearm is one for which he fully recognizes he must pay a debt to society.  He is prepared to take full advantage of the opportunities that will be afforded to him while incarcerated and is determined to come out of this situation a better person for his family and productive member of society.  In light of his youth, positive adjustment to incarceration to date, and genuine acceptance of responsibility, the Court should honor the plea agreement and impose the sentence outlined therein.

**B.      The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

*1.      To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Bishop sincerely appreciates the seriousness of this offense, particularly when he recounts the gun violence he has witnessed and of which he has been a victim.  *See id.* at ¶ 54. He has personally experienced the fear and trauma that result from being a victim of gun violence.  He therefore takes to heart the perspective that carrying a firearm increases one's own

risk of being a victim or perpetrator of gun violence and never again wants to be in either of those positions. Among the reasons he entered into the plea agreement in this case are that he recognizes the gravity of his actions and acknowledges that prosecution at the federal level was warranted.

2.    *To afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.*

The jointly recommended sentence will provide deterrence from Mr. Bishop ever again possessing a firearm or committing any other crimes. Given his presumptive state parole sentence, Mr. Bishop will be approximately 30 years old by the time he is released from prison; thus, he will be more mature and less likely to make reckless, unwise decisions. Additionally, upon learning he is a father and getting to meet his infant daughter during his present incarceration, Mr. Bishop has spent the past year missing his daughter's developmental milestones and not being able to support her in the way he hopes to when he is finally released. For that, he feels incredibly guilty and is determined to change the trajectory of his life for her. Given the impact Mr. Bishop's pretrial incarceration has had, the sentence outlined in the plea agreement will suffice to deter any further criminal conduct by him and therefore protect the public while sending the desired message to others who illegally possess firearms.

3.    *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Despite knowing he will spend the next few years of his life in prison, Mr. Bishop has an overall positive outlook about his future. He has expressed a strong desire to participate in any programs and earn any training and/or certifications available to him while serving his sentence. He recognizes his criminal record will be an obstacle in obtaining employment and welcomes any gainful employment he can find upon release; however, his desire is to one day own a

hookah lounge and be his own boss. *Id.* at ¶ 61.  The sentence outlined in the plea agreement will serve to provide Mr. Bishop with needed educational and vocational training opportunities to improve his chances of successful reentry.

> 4.    *To avoid unwarranted sentence disparities among similarly situated defendants.*

As noted in the government's sentencing memorandum, a sentence within the Guidelines range in this case will help to ensure that an unwarranted sentence disparity does not follow. Therefore, the parties respectfully request that the Court impose sentence pursuant to the plea agreement.

### III.    CONCLUSION

For the reasons articulated herein, the sentence specified in the plea agreement into which Mr. Bishop and the government entered appropriately balances the § 3553 factors while additionally accounting for the mitigating factors outlined above.  Mr. Bishop stands before this Court having fully accepted responsibility for his actions.  He knows and accepts his inevitable incarceration sentence, the collateral consequences that flow from it, and designation at a facility much farther from his family.  Considering all arguments articulated herein, as well as any brought to the Court's attention at the time of sentencing, he respectfully requests the Court impose the sentence of 37 months of incarceration, three years of supervised release, and a $100.00 special assessment.

Respectfully submitted,

_____
KATRINA YOUNG
Assistant Federal Defender

7

## **CERTIFICATE OF SERVICE**

I, Katrina Young, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Sentencing Memorandum upon Robert Eckert, Assistant United States Attorney, to his office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

KATRINA YOUNG
Assistant Federal Defender

DATE:        March 31, 2023